## Delphina Deheave, Defendant in Error, v. Walker D. Hines, Director General of Railroads, Plaintiff in Error.

1. RAILROADS, § 630*—*what is duty of flagman at railroad crossing.* It is the duty of a flagman, placed at a public railroad crossing to direct the public when to cross and when not to, to know when it is safe to cross and when not.

2. RAILROADS, § 630*—*right to rely on signals of flagman.* Persons desiring to cross a railroad at a public crossing at which a flagman is stationed have a right to assume that the flagman will know whether it is safe for them to cross and will warn them if it is not.

3. RAILROADS, § 630*—*wrong signal of flagman at crossing as gross negligence.* Where a railroad company's flagman at a public railroad crossing signals one waiting at such crossing to cross and such person does so and is struck by a train, the railroad company is guilty of gross negligence.

4. TRIAL, § 65*—*effect of uncontradicted evidence.* Positive testimony uncontradicted and unimpeached cannot be disregarded by either court or jury.

5. RAILROADS, § 621*—*sufficiency of signal by flagman at crossing.* It is the duty of a railroad company's flagman, who is stationed at a public crossing, in warning persons, desiring to cross, of the approach of a train to give such a warning of danger as will be understood by the ordinary person under such circumstances to be a warning of danger.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. RAILROADS, § 630*—*when reliance on signal of flagman relieves from contributory negligence.* If a flagman stationed at a railway crossing which one driving an automobile is seeking to cross failed to give correct signals which would be understood by the ordinary person situated as the driver then was, or gave wrong or misleading signals on which the driver, acting as an ordinary prudent person under like circumstances would have acted, relied, and he and passengers in his car were struck by a train in driving over the crossing, neither he nor his passengers can be held to have been guilty of contributory negligence.

7. RAILROADS, § 736*—*when evidence establishes negligence of railroad and flagman.* In an action to recover for personal injuries received by a passenger who was riding in an automobile which was struck by defendant's train at a public crossing at which defendant had stationed a flagman, *held,* that the evidence, which was conflicting as to whether such flagman had signaled the automobile to cross or to stop, was sufficient to support a verdict and that a judgment for plaintiff would not be disturbed.

8. NEGLIGENCE, § 225*—*sufficiency of instructions as to contributory negligence.* Instructions as to contributory negligence are sufficient if, taken together, it is impossible for the jury to misunderstand from them the true rule governing contributory negligence.

9. RAILROADS, § 779*—*sufficiency of instruction as to imputed negligence.* In an action against a railroad company to recover for injuries received at a crossing by plaintiff while riding in an automobile driven by another, an instruction that plaintiff was not chargeable for any acts of negligence of such automobile driver provided she herself did not fail to do anything which the law required her to do for her own safety, while awkwardly worded, correctly states the law as to imputed negligence.

10. RAILROADS, § 779*—*when instruction as to imputed negligence is properly refused.* In an action against a railroad company to recover for injuries received by being struck by defendant's train at a crossing while she was riding in an automobile driven by another, an instruction, requested by defendant, that plaintiff could not recover if the automobile driver was negligent in failing to look for an approaching train or in observing signals warning him of its approach is properly refused.

Error to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920. *Certiorari* denied by Supreme Court (making opinion final).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

PATTON & PATTON, for plaintiff in error; WILLIAM L. PATTON, HENRY L. PATTON and SILAS H. STRAWN, of counsel.

JOHN G. FRIEDMEYER, for defendant in error; C. F. MORTIMER and JOHN P. FLOOD, of counsel.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

This is a writ of error brought to reverse a judgment in favor of defendant in error and against plaintiff in error for $2,500 recovered in an action of trespass on the case for personal injuries sustained by defendant in error in a collision between an automobile in which she was riding and a train of Chicago and Alton Railroad at Auburn, Sangamon county, Illinois. The declaration is in one count and charges that a crossing flagman of plaintiff in error negligently signaled the driver of the automobile in which defendant in error was then riding, to approach and cross the tracks of the railroad there on a grade crossing of the said railroad tracks and the public highway, when a train was approaching at a high and dangerous rate of speed and gave no warning of its approach; that said driver, relying on such signal and not knowing that the train was approaching, did with all due care and diligence approach and attempt to cross such railroad tracks there, but that the automobile was struck by the train that was so approaching and defendant in error sustained injuries. A plea of not guilty was filed to that declaration. The negligence of plaintiff in error relied on was the conduct of the flagman above referred to.

The automobile in question was being driven by one Dr. Edwards, a veterinary surgeon, who was also a demonstrator of Saxon automobiles, and was at that time in the act of demonstrating the car in question to one Frank Reavy, a prospective purchaser. At

the time of the accident there were in the car 'the defendant in error and Dr. Edwards in the front seat, two men in the back seat and between the front and back seats there were two children. Dr. Edwards was familiar with the automobile and with the location and knew that there was a fast passenger train due to pass the point where the accident happened about that time. When the automobile approached the crossing where the accident occurred, it was blocked by a freight train and Dr. Edwards stopped the car he was driving to wait until the freight train had passed. He waited there some ten or fifteen minutes. He with his car was west of the freight train that was blocking the track. The flagman was east of it and had in his hand á large disk signal or sign on which was printed in large letters the word "stop." When the crossing was apparently cleared up, the freight train pulling out, Dr. Edwards sounded his horn and the flagman made a signal in return which Dr. Edwards and defendant in error both testified was a signal to cross. Dr. Edwards then proceeded to cross the tracks and succeeded in reaching a track on which a fast passenger train was approaching, but which was not seen by him or defendant in error until that moment. When becoming aware of its approach he attempted to stop or reverse his car and in so doing killed his engine and the car was struck and defendant in error was injured.

The questions whether or not plaintiff in error is chargeable with negligence and whether defendant in error was guilty of any contributory negligence and whether the driver of the automobile in which she was riding was guilty of such negligence as, if it can be imputed to defendant in error, would bar her right to recover, all turn on whether the flagman at the crossing where the accident happened signaled to the occupants of the automobile to cross or to refrain from crossing the tracks.

The flagman was placed there to direct the traveling public when to and when not to cross the tracks of plaintiff in error. It was his duty to know when it was safe to cross and when not (*Chicago & A. R. Co. v. Adler,* 129 Ill. 335; *Chicago & A. R. Co. v. Blaul,* 175 Ill. 183), and all persons desiring to cross there had a right to assume that the flagman did know and would faithfully warn them if it was not safe to cross. *Chicago, R. I. & P. Ry. Co. v. Clough,* 134 Ill. 586; *Chicago & A. R. Co. v. Blaul,* 175 Ill. 183. As a matter of fact it was not safe to cross when the driver of the automobile attempted to do so. The flagman was there and when the automobile party first approached the crossing he signaled them to stop and they understood the signal, and stopped while a freight train did some switching. If the testimony of Dr. Edwards and defendant in error is correct, then plaintiff in error was, through the act of the flagman, guilty of gross negligence. *Chicago, R. I. & P. Ry. Co. v. Clough,* 134 Ill. 586; *Pennsylvania Co. v. Sloan,* 125 Ill. 72. If the signal was to stop, as plaintiff in error argues it must have been, and was given in time, then so far as the flagman is concerned no negligence is shown. The flagman was dead at the time of the trial. One witness, called by plaintiff in error, testified that just as the street crossing was cleared by the freight train the flagman threw up the flag for the automobile party to stop. Whatever signal was given was made with the disk. Two witnesses have testified the signal was for the automobile party to cross, one witness says it was to stop. Manifestly in order to determine which of these witnesses was right it is necessary to know what motion, if any, was made by the flagman with the disk. Defendant in error was the only witness who used any words in attempting to describe the motion made by the flagman. She said at one time: "He pulled the flag like this," then the word

"indicating" has been inserted in the record. The abstract and the record show the following with reference to other testimony in regard to what motion was made by the flagman: "He made the sign like this, you know (illustrating)." "He made a sign to come along like that (illustrating)." "He was holding this signal in an upright position." "He threw it up for them to stop." "I saw him throw it up for them to stop." "The flagman waved his signal for me to come across." "He was standing there and gave the sign like that (illustrating). Just motioned like that (illustrating)." "No he hadn't raised it up in that position." Numerous other questions were put and answers made in reference to motions made either by the examiner or the witness, which questions and answers are meaningless to one who is reading the record. The jury heard those questions and answers and saw the motions made, both of the examiner and of the witnesses, and was in a position to understand by the words and motions made what the witness meant and whether the flagman meant for the automobile party to cross or to stop. This case presents a most excellent illustration of the rule that those who see the witnesses and hear them testify are in a better position to weigh their testimony than those who read the record of such testimony. The jury in this case must have found that the flagman by his motions invited the automobile party to proceed to cross the railroad tracks, and the judge who saw these witnesses and heard them testify has approved the verdict. It would be presumptuous in the extreme for this court from reading this record to assume to say the jury and the trial court were both wrong in their interpretation of the signs made by the flagman or the weight of the testimony of the witnesses on this subject. The general reputation of these witnesses for veracity was not shown to be bad, neither was the story told by them so inherently im-

probable as to warrant us in disregarding it for that reason.  There is nothing inherently improbable in evidence tending to show that a flagman at a railroad crossing neglected to do his duty or that he failed to note the approach of a train or gave a wrong signal to persons relying on him for guidance as to when it was safe to attempt to cross the tracks at the crossing over which he was presiding.  If such evidence should be held inherently improbable and therefore unworthy of belief, then any evidence of negligence might with equal propriety be disregarded for the same reason, for everyone is presumed to do his duty. The rule is that positive testimony uncontradicted and unimpeached cannot be disregarded by either court or jury.  *Stephens v. Hoffman,* 275 Ill. 497-502. It was negligence for the flagman under the circumstances there present to signal the party to cross the railroad, if he did so, and it was equally negligent for him to fail to give some unequivocal sign to the persons whom he knew were waiting to cross the track there, from which an ordinary person situated as these persons then were could accurately determine whether they were to proceed or stay where they were, if he did so fail.  It was his duty there at that time, with the fast train approaching, to make some sign that would amount to a warning of danger and that would be understood by the ordinary person under like circumstances to be a warning of danger. We are not prepared to say that the jury were not justified in finding that the acts of the flagman amounted to negligence of plaintiff in error.  The question of contributory negligence turns on much the same proposition.  The driver of the automobile as well as the passengers in it had a right to rely on the flagman to give them correct signals that would be understood by the ordinary person situated as they then were.  If this was not done or if wrong and misleading signals were given on which these persons, act-

ing as ordinarily prudent persons under the circumstances would have acted, in fact did rely, then neither the driver of the automobile nor his passengers therein can be held to have been guilty of contributory negligence. In any event it was a question for the jury to determine from all the facts and circumstances in evidence whether defendant in error was at and immediately before the accident in the exercise of due care for her own safety. Under the circumstances this court would not be justified in holding that the verdict is contrary to the weight of the evidence either as to the negligence of the servants of plaintiff in error or the contributory negligence of defendant in error or of the driver of the automobile.

The fifth instruction given for defendant in error in substance told the jury that if defendant in error and the driver of the car in which she was riding were in other respects in the exercise of due care, for their own safety, then the fact that they relied on the signals given by the flagman, if they did so, would not defeat the right of defendant in error to recover. In several other instructions in the series given at the request of each of the parties the jury were told what would and what would not amount to due care on the part of plaintiff in error and the driver of the car. It was impossible for the jury from all these instructions to misunderstand the true rule governing the question of contributory negligence.

The eighth instruction given for defendant in error told the jury in substance that defendant in error was not chargeable for any acts of negligence on the part of the driver of the automobile provided she herself did not fail to do anything that the law required of her to do for her own safety. The instruction is not well worded but states correctly the law on the question of imputed negligence.

Plaintiff in error asked one instruction that the

court refused. It told the jury in substance that defendant in error could not recover if the driver of the automobile in which she was riding was negligent in failing to look for an approaching train or in observing signals warning him of an approaching train. This instruction ignores the question whether defendant was a passenger for hire or was a mere guest or companion. It also ignores the question whether she was in such relation to the driver as to be able to exercise influence over him. Also the question whether she in fact did attempt to prevent him from driving on the track there. Under this instruction she could not recover if she had heard or seen the approaching train and begged the driver not to try to cross the track in front of it or if she had been a prisoner bound, gagged, blindfolded and helpless. The instruction was properly refused.

Finding no error in this record the judgment is affirmed.

*Judgment affirmed.*